FILED

Dec 09 2019, 8:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Ronald J. Severt
Covington, Indiana

ATTORNEY FOR APPELLEE

Jon P. McCarty
Covington, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Scott Shields,<br>*Appellant-Defendant,*<br><br>v.<br><br>Town of Perrysville,<br>*Appellee-Plaintiff.* | December 9, 2019<br><br>Court of Appeals Case No.<br>19A-MI-979<br><br>Appeal from the Vermillion Circuit Court<br><br>The Honorable Robert M. Hall, Special Judge<br><br>Trial Court Cause No.<br>83C01-1706-MI-16 |

**Bailey, Judge.**

# Case Summary

Scott Shields ("Shields") challenges a judgment entered in favor of the Town of Perrysville (the "Town") upon its action to quiet title. The action concerns the location of an alley adjacent to Shields's property. The dispositive issue is whether the court clearly erred in concluding the alley was located where the Town contended—which means Shields built a fence outside his property line.

We affirm.

# Facts and Procedural History

Shields has an interest in property within the Town that the parties refer to as Lot 4. Shields obtained a survey of Lot 4 (the "Survey"), which shows a stone drive within Lot 4 running roughly north-south. The Survey shows an alley several feet west of the stone drive—running north-south, between Lots 4 and 5. The Survey shows an outbuilding on Lot 5 almost entirely obstructing the alley.

After obtaining the Survey, Shields built a fence along the purported western boundary of Lot 4 depicted in the Survey. Shields built the fence a few feet from the Lot 5 outbuilding and began parking on the stone drive east of the fence. Neighbors complained, contending Shields was parking in the alley.

The Town filed the instant action to quiet title, alleging Shields "erected a fence [that] has completely obstructed the believed location of the alley" in which the Town obtained interest through a platted and recorded deed. App. Vol. II at 9.

The Town also alleged it had an enforceable right to remove the fence due to the doctrine of title by acquiescence. A bench trial was held, which included testimony from Mike Bowman ("Bowman"), President of the Town Council.

[6] Bowman testified that, as a child, he rode his bicycle down an alley east of the Lot 5 outbuilding. He testified that the outbuilding was once used as a mechanic's garage, with the garage facing the alley. Bowman testified that he went to the area and measured, and that if the alley was located where the Survey shows—west of the stone drive—the location would not accommodate the widths of lots to the west. He testified that if one instead begins measuring at the edge of the stone drive—"where the old alley would have been"—and measures to the west, "there's enough footage for all [the] lots." Tr. at 49.

[7] There was also testimony from the surveyor who completed the Survey. He testified that he used 170-year-old records and that there were no obvious "monuments" or landmarks to use to correlate those records with the current observed conditions. *Id.* at 9-10. His conclusion as to the location of the alley was his "educated opinion," and he estimated the location of the property lines with a three-foot uncertainty in the east-west dimension. *Id.* at 17-18.

[8] The trial court entered judgment in favor of the Town, ordering (1) "that the alley shall remain as designated by the Town and not by the [S]urvey," and (2) "that the Town has title to the area by acquiescence." App. Vol. II at 11. The trial court also ordered Shields to remove the fence. Shields now appeals.

# Discussion and Decision

## Standard of Review

[9]     Neither party requested findings and conclusions under Indiana Trial Rule 52. A court may enter *sua sponte* findings and conclusions, in which case its findings and conclusions control only the issues they cover, with a general-judgment standard applicable to all other issues. T.R. 52(D); *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997). Under a general-judgment standard, we will not reweigh evidence or evaluate witness credibility, and will affirm the judgment "if sustainable upon any theory consistent with the evidence." *Perdue Farms, Inc. v. Pryor*, 683 N.E.2d 239, 240 (Ind. 1997). We must give "due regard . . . to the opportunity of the trial court to judge the credibility of the witnesses," and shall not set aside the judgment "unless clearly erroneous." T.R. 52(A).

[10]    Here, the trial court determined "that the alley shall remain as designated by the Town and not by the [S]urvey and that the Town has title to the area by acquiescence." App. Vol. II at 11. In its written order, the court discussed the issue of acquiescence, but did not include findings on the issue of whether the stone drive was the actual platted alley location. We review this latter issue—which is dispositive—under a general-judgment standard. *See* T.R. 52(D).[1]

---

[1] Because this issue is dispositive, we do not address the parties' arguments concerning title by acquiescence.

# Platted Alley

## Location

[11] Indiana Code Section 32-30-2-1 permits actions to quiet title:

> A person having a valid subsisting interest in real property and a
> right to the possession of the real property may recover the real
> property and take possession by an action brought against the
> tenant in possession or, if there is not a tenant, against the person
> claiming the title or interest in the real property.

To recover through an action to quiet title, "the plaintiff must recover on the strength of the plaintiff's own title." Ind. Code § 32-30-2-15.

[12] At trial, the Town introduced a recorded document that originated in the 1850s. The document describes the pertinent addition to the Town, depicting an alley between Lots 4 and 5. The document states that the alley is twelve feet wide.

[13] At trial, there was conflicting evidence about the location of the platted alley. There was testimony from Bowman, who measured the area and concluded the alley was located along the stone drive. Bowman testified that the stone drive—not the location in the Survey—accommodated the dimensions of the lots to the west. In contrast, Shields presented testimony from the surveyor who put together the Survey. The surveyor testified that he could not find a stone monument on which he could base his measurements. He explained that he put together "170 years of puzzle pieces" to reach a "theory of location" of the alley. Tr. at 14. The surveyor also testified to "ambiguity in the east/west

dimension," in that a nearby street did not have a platted width. *Id.* at 16. He testified that the Survey was based, in part, on an assumption about the width of Jackson Street, a north-south road to the east of the subject lots.

[14] In challenging the judgment in favor of the Town, Shields argues that the Town "did not offer any evidence to dispute the expert survey." Br. of Appellant at 6. Shields invites us to ignore Bowman's testimony, asserting that Bowman had "a vested interest in the outcome of the proceedings." *Id.* Shields further asserts that Bowman's testimony is "self-serving and cannot be relied upon." *Id.*

[15] Shields's argument amounts to a request to reweigh evidence and reassess witness credibility. We must decline. Moreover, to the extent Shields is arguing that a survey can be refuted only by another survey, he directs us to no authority for this proposition. Ultimately, the Survey was cobbled together based upon numerous assumptions rather than monumentation in the field making the survey problematic at best. A party claiming title must do so on the strength of his own title. Here, the fact-finder was free to accept Bowman's opinion and reject the surveyor's as being so qualified as to be unreliable.

## Abandonment

[16] Shields briefly argues the alley is abandoned. He directs us to *Fenley Farms, Inc. v. Clark*, 404 N.E.2d 1164 (Ind. Ct. App. 1980), an Indiana Court of Appeals case discussing abandonment of public roads through non-use. *Fenley Farms* drew the common-law principle of abandonment from an 1871 Indiana

Supreme Court case, *Jeffersonville, Madison, & Indianapolis R.R. Co. v. O'Connor*, 37 Ind. 95 (1871). A few years later, however, the Indiana Supreme Court implicitly rejected common-law abandonment, instead holding that once a public way has been established, "[t]he rights of the public in the way can only be divested by proceedings authorized by law." *Kyle v. Bd. of Comm'rs of Kosciusko Cty.*, 94 Ind. 115, 116-17 (1884). In 1945, the Indiana Supreme Court cited the latter case and reiterated:

> The vacation of highways is not favored, and the rights of the public in and to a road can be divested only by some method authorized by law. There must be a full and substantial compliance with the provisions and requirements of that law to cause a vacation of an existing highway.

*McHenry v. Foutty*, 60 N.E.2d 781, 782 (Ind. 1945). Relying on this more recent case, this Court observed that a road can be "closed as against the public only by official action by the appropriate governmental authority." *Cook v. Rosebank Dev. Corp.*, 376 N.E.2d 1196, 1201 (Ind. Ct. App. 1978).

[17] We apply the most recent approach articulated by the Indiana Supreme Court. Doing so, we observe that Indiana Code Section 36-9-2-5 permits the vacation

of public ways. Here, however, there is no evidence the alley was vacated. Thus, the court did not clearly err in rejecting a claim of abandonment.[2]

[18]  The judgment is not clearly erroneous.

[19]  Affirmed.


Najam, J., and May, J., concur.

---

[2] Shields also argues the court erred because it "failed to either order [the Town] to have a survey done, or to provide a legal description of the alleged alley that [the Town] was awarded." Br. of Appellant at 7. Shields claims this was reversible error "because it created a hardship for the adjacent landowners." *Id.* Yet, there is no indication that Shields asked the court to take these actions. *See Reynolds v. Reynolds*, 64 N.E.3d 829, 834 (Ind. 2016) ("Appellants may not sit idly by and raise issues for the first time on appeal."). In any case, Shields provides no citation to legal authority supporting his contention that the trial court committed reversible error by failing to take these actions. *See* Ind. Appellate Rule 46(A)(8)(a). He waived this claim.