## Southern Railway Company *v.* Elliott.

[No. 21,038. Filed December 19, 1907. Rehearing denied April 8, 1908.]

1. Appeal.—*Parties.—Joint Defendants.*—Where three parties are joint defendants, but the verdict and judgment are against one thereof and in favor of the other two, the successful two are neither proper nor necessary parties to an appeal taken by the unsuccessful one. p. 276.
2. New Trial.—*Grounds.—Removal of Causes.—Appeal.*—The overruling of a petition to remove an action to the federal court must be assigned as a reason for a new trial, in order to raise any question thereon on appeal. p. 276.
3. Pleading.—*Demurrers.—Joint or Several.—Exceptions.*—A demurrer alleging that each defendant, for himself, separately and

severally demurs to each paragraph of the complaint for the reason that neither paragraph states facts sufficient, followed by an entry that "the demurrer is now overruled * * * to each of which rulings * * * the defendants separately at the time excepted," sufficiently presents, on appeal, the question of the sufficiency of the paragraphs as to each defendant. p. 277.

4. PLEADING.—*Complaint.*—*Master and Servant.*—*Railroads.*—*Hauling Defective Cars.*—*Negligence.*—A complaint against a lessee railroad company, the operating company and its locomotive engineer, alleging that defendants "coupled their train to an old, worn and defective car for the purpose of hauling it to Princeton, to have same repaired; that the draw-bars, draw-heads, bumpers, rods and timbers * * * were rotten, decayed and defective"; that while plaintiff, who was a brakeman for one of defendants, was making a coupling thereof "said defendants * * * negligently backed said engine * * * against said defective car" thereby breaking said coupling and injuring plaintiff; that defendants knew of such defects and plaintiff did not, attributes no negligence to the employer company. p. 280.

5. SAME. — *Complaint.* — *Negligence.*—*Allegations.*—*General.*—*Specific.*—Specific allegations in a complaint for negligence control the general allegations thereof. p. 281.

6. MASTER AND SERVANT.—*Foreign State.*—*Presumption That Common Law Obtains.*—Where nothing to the contrary appears, the common law, as to the rights of master and servant, will be presumed to be in force in a sister state. p. 283.

7. SAME.—*Railroads.*—*Injuries of Brakeman by Engineer.*—At the common law, the locomotive engineer and the brakeman of a train are fellow servants; and for injuries to a brakeman caused by the negligence of an engineer, there is no redress. pp. 283, 284.

8. PLEADING. — *Complaint.* — *Railroads.* — *Negligence.* — *Allegation that "Defendants" Did Certain Acts.*—In an action by a brakeman against the lessee railroad company, the operating company and its locomotive engineer, for damages for personal injuries sustained in Illinois, an allegation that "defendants" negligently backed the engine with great force and broke the defective coupler, thereby injuring plaintiff, does not charge either of such companies with any negligence whatever. p. 284.

9. EVIDENCE. —*Judicial Notice.* — *Railroads.* — *Operation.* — *Negligence.*—Courts take judicial notice that an incorporated railway company cannot commit negligence in the operation of its engines, cars or trains. p. 284.

10. PLEADING. — *Complaint.* — *Railroads.* — *Negligence.* — *Defective Cars.*—*Notice.*—A complaint against a lessee railroad company, the operating company, and its locomotive engineer, alleging (1) that plaintiff was employed as a brakeman by such operating

company; (2) that such defendant, at Mt. Vernon, Illinois, coupled its train "to an old, worn and defective car for the purpose of hauling said car to Princeton [Indiana], to have it repaired; that the draw-bars, draw-heads, bumpers, rods and timbers * * * were worn, rotten, decayed and defective"; (3) that "said defendants then and there carelessly and negligently backed said engine up to and against said defective car with great force and speed," producing severe and permanent injuries to plaintiff while in the necessary act of making a coupling; (4) that defendants knew of such defects, and (5) that plaintiff did not know thereof, states no cause of action, and presents no question as to the failure of such company to notify its servant of the defect. p. 285.

From Dubois Circuit Court; *E. A. Ely,* Judge.

Action by Louis W. Elliott against the Southern Railway Company and others. From a judgment for plaintiff against said company, it appeals. Transferred from Appellate Court under §1399 Burns 1908, Acts 1901, p. 565, §15. *Reversed.*

*A. P. Humphreys, John D. Welman* and *M. W. Fields,* for appellant.

*R. W. Armstrong, W. E. Cox* and *Sol. H. Esarey,* for appellee.

JORDAN, J.—Appellee instituted this action in the lower court against appellant, the Southern Railway Company, Joseph Ruggles and the Southern Railway Company of Indiana, to recover damages on account of personal injuries sustained by him while in the service of appellant railroad company. Appellant unsuccessfully petitioned the trial court to remove the cause to the federal court on the ground of diversity of citizenship. Upon the issues there was a trial by jury, and a general verdict was returned against appellant, awarding appellee damages in the sum of $6,000. Answers also to interrogatories propounded to the jury were returned along with said verdict. The jury found in favor of the appellant's codefendants. Appellant moved for a new trial, assigning various reasons therefor. This motion

was overruled, and judgment on the verdict was rendered against appellant. A judgment was rendered in favor of the other defendants for costs.

To reverse the judgment against it, appellant prosecutes what may be considered a vacation appeal, and has assigned the following alleged errors upon which it relies for reversal: (1) Overruling its petition to remove the cause to the federal court; (2) overruling the demurrer to the first and second paragraphs of the complaint; (3) overruling the motion for judgment on the answers of the jury to the interrogatories; (4) overruling the motion for new trial.

Appellee presents and urges as a threshold proposition that the appeal of appellant must be dismissed, because it was taken in vacation, and the codefendants, Joseph

1. Ruggles and the Southern Railway Company of Indiana, have not been made parties to the appeal. While it is true that these latter parties were codefendants of appellant in this action, nevertheless they were not its coparties to the judgment from which it has appealed. As hereinbefore shown, the verdict of the jury was against appellant, but in favor of said codefendants. Likewise the judgment of the court was against appellant, but in favor of said codefendants. Therefore the latter can have no interest whatever in the judgment, for the purpose of reversing which appellant prosecutes this appeal. They are neither necessary nor proper parties. Therefore appellee's contention that the appeal be dismissed is denied. *Easter* v. *Severin* (1881), 78 Ind. 540; *Berghoff* v. *McDonald* (1882), 87 Ind. 549; *Lowe* v. *Turpie* (1897), 147 Ind. 652, 692, 37 L. R. A. 233.

The first error discussed by counsel for appellant is that relating to the overruling of the petition to remove the cause to the federal court. We are, however, precluded

2. from reviewing or considering this question, because the ruling of the trial court denying the petition was not assigned as a reason in the motion for a new trial. It

cannot be presented by the independent assignment of error. *Southern R. Co.* v. *Sittasen* (1906), 166 Ind. 257.

The complaint is in two paragraphs, but each party concedes that the case was tried solely upon the second, therefore the first paragraph, so far as this appeal is concerned, may be considered as eliminated from the case.

Appellant's counsel next argue that the second paragraph of the complaint is not sufficient in facts to constitute a cause of action against appellant; and therefore the court 3. erred in overruling the demurrer. Counsel for appellee urge some objections to the demurrer and against the exceptions reserved upon the ruling of the court thereon. The demurrer upon its face shows that each of the defendants for himself demurred separately and severally to each paragraph of the complaint, for the reason that neither paragraph states facts sufficient to constitute a cause of action. The record recites that "the demurrer is now overruled by the court, to each of which rulings of the court each of the defendants separately at the time excepted." The objections advanced by counsel for appellee are that the demurrer is not good nor in proper form, and that the statement therein that neither paragraph of complaint states facts sufficient to constitute a cause of action was not sufficient to raise the question that it did not state facts sufficient to constitute a cause of action against any one of the defendants. It is further insisted that the record discloses that the demurrer was overruled, but that it does not show which of the demurrers, and that the exception to the ruling must be regarded as a ruling on one of the demurrers only, and the case of *Noonan* v. *Bell* (1902), 159 Ind. 329, is cited in support of appellee's argument. There is no merit in appellee's contention. The demurrer was sufficient in form to challenge the sufficiency of each paragraph of the complaint as to each of the defendants demurring. *Whitesell* v. *Strickler* (1907), 167 Ind. 602. The cases of *Noonan* v. *Bell, supra,* and *Southern Ind. R. Co.* v. *Harrell* (1904),

161 Ind. 689, 63 L. R. A. 460, so far as they can be said to sustain the point raised by counsel for appellee, are expressly disapproved or overruled by the case of *Whitesell* v. *Strickler, supra.*

The second paragraph of the complaint, among other things, alleges that "said railway defendants were railway corporations, duly and legally organized and incorporated, the former under the laws of Virginia, and the latter under the laws of Indiana; that these defendants operated a line of steam railway extending from Louisville, Kentucky, to St. Louis, Missouri; that said line, in its course to and from said points, passes through Dubois county, Indiana, and through the town of Golden Gate, Illinois;" that "among the employes working for said railway defendants on April 29, 1904, the date of the alleged injuries to plaintiff herein, were this plaintiff and the codefendant of said railway, Joseph Ruggles; that on the day aforesaid the plaintiff was employed by defendants as a brakeman on a freight-train, and was at the time of the receipt of his injuries engaged in working upon the freight-train run by defendants from East St. Louis, Illinois, over and upon their line of railway to Princeton, Indiana; that Joseph Ruggles was employed by said railway defendants as a locomotive engineer, and as such had charge and control of the locomotive engine drawing the train upon which this plaintiff was laboring at the time he received his injuries;" that "at Mt. Vernon, Illinois, said railway defendants coupled their train to an old, worn and defective car, for the purpose of hauling said car to Princeton to have same repaired; that the draw-bars, draw-heads, bumpers, rods and timbers supporting said machinery, on account of the long and continued use thereof in said car, had become and were worn, rotten, decayed and defective, so much so that when the engine was backed up to and against said car the force of said collision caused by their coming in contact with each other, on account of the rotten, decayed and defective condition of

said draw-bars, draw-heads, bumpers, rods and timbers supporting same, caused said draw-bars, draw-heads, timbers, rods and bumpers to break and give way; that when said draw-bars, draw-heads, bumpers and timbers broke and gave way said engine thereby pressed up to and against said car, thereby catching plaintiff between said engine and car, mashing and permanently crippling and injuring him; that at Golden Gate, Illinois, it became necessary to uncouple said defective car from said engine; that in making said uncoupling between said engine and car it became and was the duty of this plaintiff to go between said engine and car, and while performing his duty in making said uncoupling, and while between said car and engine engaged in making said uncoupling, he was, without any negligence or carelessness whatever upon his part, but by and through the negligence and carelessness of defendant, hurt and permanently crippled for life; that said railway defendants were guilty of carelessness and negligence at said time in using said car with old, rotten and defective draw-bars, draw-heads, bumpers and timbers supporting the same, which said draw-bars, draw-heads, bumpers and timbers, on account of their rotten and decayed condition, could not withstand the force and shock of said engine's being backed up to and against said car, but, on account of and by reason of the rotten, defective and decayed condition of said draw-bars, draw-heads, bumpers and timbers in said car, when said engine backed up and against said car, the draw-bars, draw-heads, bumpers and timbers broke and gave way, and as a result thereof said car and said engine came together, thereby catching the plaintiff between the same, while he was in the line of his duty engaged at his work, mashing, wounding and permanently injuring the plaintiff herein.'' It is further alleged that ''said defendants, at the time plaintiff received his hurt, knew he was between said car and said engine, attempting to uncouple said car from said engine, and they knew that the car which

plaintiff was attempting to uncouple from said engine had on it at said time said timbers, and well knew that, on account of the rotten, decayed and defective condition of the same, it could not withstand great force in jamming said engine back and against said car, but, notwithstanding said knowledge on the part of said defendants, said defendants then and there carelessly and negligently backed said engine up to and against said defective car with great force and speed, and as a result thereof, on account of the old, rotten and defective condition of said draw-bars, draw-heads, timbers and bumpers supporting the same, they broke and gave way at the time plaintiff was attempting to make said uncoupling, and as a result of said breaking said car and said engine were jammed together, catching plaintiff between the same, and producing the injuries herein complained of; that defendants knew at said time that said draw-bars, draw-heads, bumpers and timbers were old, rotten, defective and decayed, or if said defendants did not have direct knowledge of the same the defects existing in said car had been there for such a time that if defendants had exercised ordinary care and inspected said car, as their duty requires them to do, they could have discovered the defective condition of said car; that plaintiff did not know, nor did he have any means of knowing, that said draw-bars, draw-heads, bumpers and timbers could not withstand the force of such collision caused by said engine's being backed up to and against said car; that plaintiff did not know, nor did he have any means of knowing, that said draw-bars, draw-heads, bumpers, timbers and rods were rotten, broken, decayed and defective.''

Possibly it may be said that the theory upon which appellee attempts to proceed in the paragraph in question is that negligence may be imputed to the defendants on

4. account of using the car in question equipped, as alleged, with ''old, rotten and defective timbers, draw-bars, draw-heads,'' etc., and that such use was the proximate

cause of the accident.  The charging parts of the pleading, in respect to the accident by which appellee was injured, may, for convenience, be divided into three parts.  The first charge is introduced by the averments that "at Mt. Vernon, Illinois, railway defendants coupled their train to an old, worn and defective car, for the purpose of hauling said car to Princeton, to have it repaired."  In so doing, however, no negligence is attributed to appellant company.  The charge however is made that the draw-bars, draw-heads, timbers, etc., of this car, which was being taken to the repair shops, had become "worn, rotten, decayed and defective; that when the engine was backed up to and against said car the force of the collision caused by the engine and car coming in contact with each other, etc., caused said draw-bars, draw-heads, etc., to break and give way; that when said draw-bars broke and gave way the engine thereby pressed up to and against the car, mashing and injuring the plaintiff.

The second charge is that in uncoupling the engine and the car in question it became and was the duty of plaintiff to go between the engine and the car for that purpose, and while so engaged he was, "by and through the carelessness and negligence of the defendants, hurt and permanently crippled."  The specific negligence, however, attributed to defendant, is that of using said car with old, rotten and defective draw-bars, draw-heads, etc., which, on account of their rotten and decayed condition, "could not withstand the force and shock of said engine's being backed up to and against said car," but on account thereof gave way, and the car and engine came together and injured the plaintiff.  The specific fact of negligence imputed to the defendants by the latter allegations control the general statement that appellee was injured "by and through the carelessness and negligence of the defendant."  *Frain* v. *Burgett* (1898), 152 Ind. 55, and cases cited.  By the third charge it is averred that, at the time plaintiff was injured, defendants "knew that he was between said car [the car

which as being hauled to Princeton for repairs] and said engine [the one which was drawing the car and which was, as disclosed, in charge of Ruggles, the engineer], and that the defendants knew that the plaintiff was attempting to uncouple said car from the engine," and that they knew that the timbers of this car were rotten, decayed and defective, but, notwithstanding said knowledge of its condition, said defendants then and there carelessly and negligently backed said engine up to and against said defective car with great force and speed, and as a result thereof, and on account of the rotten and defective condition of said draw-bars, draw-heads, timbers, etc., they broke and gave way at the time plaintiff was attempting to make the uncoupling, and he was jammed between said car and engine and sustained the injuries of which he complains. It is further alleged that the defendants, at the time, had knowledge of the condition of the car, but that the plaintiff had no knowledge of its said condition. It will be noted that there is no direct or positive averment in the first charging part of the paragraph to show that the engine was actually backed up to and against the defective car at the time plaintiff was engaged in uncoupling. There is but a mere recital "that when the engine backed," etc. This recital cannot serve to perform the office of a positive or direct averment that the engine at the time of the accident "was backed," etc. It is but the equivalent of asserting that whenever the engine was backed, or if it should be backed, the consequences as there stated would follow. For this reason alone, if for no other, it must, under the rules of good pleading, be held that the first charge of the paragraph is fatally defective in stating a cause of action. The second charge may be said to be impressed substantially with the same deficiency and open to the same objections as is the first. It will be observed that it is there alleged that it was the duty of the plaintiff to go between the engine and the car for the purpose of uncoupling, and while so engaged he was, by the carelessness and negligence of the defendants,

hurt, crippled, etc. The specific charge of negligence attributed to the defendants, as hereinbefore stated, is in using the car in question, equipped with its rotten and defective draw-bars and draw-heads, which, by reason of said defective condition, could not withstand the force and shock of said engine's being backed up to and against said car, but on account thereof they gave way, and the car and engine came together and injured plaintiff. There is, however, an entire absence of any direct or positive averment or allegation that the defendants, or any one of them, backed the engine against the defective car. There is only the mere recital by the pleader, apparently by way of argument, to illustrate that the equipments of the car were in such a defective condition that they could not withstand the shock of the engine's being backed up to and against the car.

The charge is made that at the time plaintiff was injured the defendants knew that he was between the car and the engine, and that said defendants knew of the defective condition of the car, that it could not withstand the force of jamming the engine against it, and that said defendants then and there carelessly and negligently backed said engine, with great force, up to and against said defective car, thereby catching plaintiff between the car and engine and injuring him. As shown, the accident by which appellee was injured occurred at a point in Illinois, and, as nothing to the contrary appears, we must assume that the common law is in force in the latter state. Therefore appellant's liability, under the facts as alleged, must be tested by the principles of the common law. By the latter law the fellow-servant rule is recognized and enforced. If the law in force in the state of Illinois at the time appellee was injured did not, under the facts alleged, award him a right of action against appellant, then no cause of action can be said to exist against appellant. *Baltimore, etc., R. Co.* v. *Reed* (1902), 158 Ind. 25, 92 Am. St. 293, 56 L. R. A. 468; *Baltimore, etc., R. Co.* v. *Jones* (1902), 158 Ind. 87,

As declared by the facts averred, Joseph Ruggles, the engineer, and appellee, who was a brakeman, were both, at the time of the alleged injury, employes of appellant, and 8. each was the fellow servant of the other, serving under a common master. Ruggles, as engineer, it appears was at the time of the accident in charge of and operating the engine in question. Therefore the allegations in the third charge of the paragraph, that the defendants carelessly and negligently backed the engine with great force, etc., show nothing more than that the alleged negligent act was that of Ruggles, or some other servant of appellant who was at the time operating the engine in controversy. As the negligence alleged in regard to backing the engine with great force, etc., was that of a fellow servant of appellee, *prima facie* at least, under the rule of the common law, no liability is shown. We judicially know that an incorporated railroad company can operate its locomotive engine 9. and cars only by and through its servants, and in an action against it by a servant thereof for the recovery of damages for personal injuries sustained while in its employ, where the complaint alleges that the plaintiff was injured by the negligent manner in which the locomotive engine, car or train of the railroad company was run or operated, the logical presumption arises that the injury complained of was the result of the negligence of a fellow servant of plaintiff. *Indianapolis, etc., R. Co.* v. *Johnson* (1885), 102 Ind. 352, 356; *Di Marcho* v. *Builders Iron Foundry* (1893), 18 R. I. 514, 27 Atl. 328, 28 Atl. 661.

The engineer in charge of the engine which, as averred, was negligently backed upon appellant's railroad, could not in any sense be regarded as standing in the relation 7. of master to the appellee. He was, under the rule of the common law, only a fellow servant of appellee, and for his negligence alone the latter cannot recover in this action against appellant. In support of our holding that neither the first nor the second charge of the paragraph

in question sufficiently alleges actionable negligence against appellee, see *City of Logansport* v. *Kihm* (1902), 159 Ind. 68, and authorities cited; *Pittsburgh, etc., R. Co.* v. *Light-heiser* (1904), 163 Ind. 247; *Malott* v. *Sample* (1905), 164 Ind. 645, and cases cited; *Kentucky, etc., R. Co.* v. *Moran* (1897), 169 Ind. 18, and cases cited. In this latter appeal, in considering the question raised as to the sufficiency of the complaint on demurrer, we said: "In an action at common law by a servant to recover damages against the master, founded upon the failure of the latter to perform his legal duties, to render the complaint sufficient to repel a demurrer, the act done or omitted to be done should be characterized to have been negligently done or negligently omitted, as the case may be. Negligence must at least be shown by the pleading, either by direct or positive averments, or from the statement of such facts therein as will clearly raise an inference that the injury of which the plaintiff complains is the result of defendant's negligence."

Certainly negligence cannot be imputed to appellant company by reason of the fact alone that at Mt. Vernon, Illinois, the car in controversy was coupled to the freight-train, on which appellee was acting as brakeman, for the purpose of taking it to the shops at Princeton to have it repaired. Possibly the very purpose of removing the car to the shops was to repair the defective draw-bars, draw-heads, bumpers, etc., about which appellee complains. If it was in the condition alleged in the complaint, it was the duty of the railroad company to have the necessary repairs made before using it in the operation of its railroad. It appears that in order to discharge this required duty the car was being hauled to the repair shops, and while *en route* the engine drawing the train to which it was attached was operated by the servants of the companies in charge thereof in such a manner as to cause the engine to collide with this disabled car, with such force as resulted in the injury to appellee, who had no knowledge at the time of the condition

of said car. The question which confronts us under the facts is not that the railroad companies were negligent in omitting to notify appellee before the accident of the condition of the car, for no such question as this is presented by the facts alleged in the pleading. The second paragraph of the complaint is clearly insufficient, for the reasons given, to state a cause of action.

The court therefore erred in overruling the demurrer thereto, for which error the judgment is reversed, with instructions to the lower court to sustain said demurrer.