CHICAGO, INDIANAPOLIS AND LOUISVILLE RAILWAY COMPANY *v.* STEPP, ADMINISTRATRIX.

[No. 6,517. Filed May 14, 1909. Rehearing denied July 1, 1909. Transfer denied October 7, 1909.]

1. PLEADING.—*Demurrer to Complaint.—Amended Complaint on File.*—A demurrer to the "complaint," where an "amended complaint," is on file, will be considered as addressed to the latter. p. 355.

2. PLEADING.—*Complaint.— Railroads.— Highway Crossing Accidents.*—A paragraph of complaint alleging that the plaintiff's decedent attempted to cross defendant railroad company's track upon a highway, that he looked and listened but neither saw nor heard a train, that defendant negligently failed to sound the whistle or ring the bell. and ran over and killed said decedent, and another paragraph alleging that the defendant placed a shed and a pile of ties along its track, thereby obstructing a view thereof, that the decedent looked and listened, but neither saw nor heard the approaching train, and that defendant negligently failed to ring the bell or sound the whistle, and ran upon and killed the decedent, severally state a cause of action. p. 355.

3. PLEADING.—*Complaint.—Railroads.—Negligence of Employes.— Line of Duty.*—A complaint against a railroad company for killing a traveler upon a highway crossing need not allege directly that

the negligent acts of its servants causing such death were committed while in the line of duty, where the complaint otherwise shows it.   p. 357.

4.  RAILROADS.— *Buildings Near Track.— Negligence.*— A railroad company's maintenance of a shed and a rick of ties along its track, so as to obstruct the view of travelers using the highway, does not constitute negligence as a matter of law, but the manner of maintenance may constitute negligence.   p. 358.

5.  APPEAL. — *Unsatisfactory Judgment.* — *Railroads.* — *Highway Crossing Accidents.*—Where decedent, somewhat deaf, walked from a saloon toward and upon a railroad crossing, no signal being given of the approaching train, and there being time for the engineer to slow the train, thus avoiding the death, and the answers to the interrogatories are to some extent conflicting and indefinite, and the result reached seems clouded with doubts, a new trial may be ordered.  Roby, J., dissenting.  p. 359.

From Floyd Circuit Court; *William C. Utz*, Judge.

Action by Sarah H. Stepp, as administratrix of the estate of George H. Stepp, deceased, against the Chicago, Indianapolis and Louisville Railway Company.  From a judgment on a verdict for plaintiff for $4,500, defendant appeals.  *Reversed.*

*E. C. Field, H. R. Kurrie, M. Z. Stannard* and *G. B. McIntyre*, for appellant.

*George C. Kopp, Willard Phipps* and *C. L. Jewett*, for appellee.

COMSTOCK, P. J.—Appellee recovered judgment against appellant for the killing of her decedent by a train run on appellant's railway over a public crossing about 9 o'clock in the morning of October 7, 1905.

The amended complaint is in three paragraphs.  The first alleges negligence in failing to give the statutory signals as the train approached the crossing; the second, negligence in failing to give such signals, and in erecting a berry shed and piling crossties upon the right of way some distance south of the crossing, so as to obstruct the view of a train from the time it was within five hundred feet, until within about one hundred and fifty feet of the crossing; the third,

negligence in failing to give warning to the decedent when he was discovered upon the track when the engineer was about one hundred and twenty-five feet from the crossing, and also in maintaining a berry shed and piling crossties as before stated. In the third paragraph there is no charge of failure to give the statutory signals.

A separate demurrer for want of facts was overruled as to each of said paragraphs, and a general denial filed thereto. Appellant's motions for judgment on the answers to interrogatories returned by the jury, and for a new trial, were overruled.

The assignment of errors questions the sufficiency of each paragraph of said amended complaint, the action of the court in overruling appellant's motion for judgment on the answers to interrogatories, and in overruling the motion for a new trial.

Appellee makes the point that the record fails to disclose that any demurrer was filed to any paragraph of the complaint, and that no question is presented as to their sufficiency.

The point is made upon the fact that the pleading to which the demurrer was addressed is styled "the complaint." The demurrer was, however, filed after the amended complaint was filed, and it was overruled as a demurrer to the amended complaint. It should, therefore, be treated as a demurrer to the amended complaint. *City of Vincennes* v. *Spees* (1905), 35 Ind. App. 389.

It is objected that in none of said paragraphs is it averred that defendant was negligent. Each paragraph alleges that the defendant on October 7, 1905, was the owner and operator of a line of railroad, with locomotives, freight- and passenger-cars to and from the city of Louisville, Kentucky, to the city of Chicago, Illinois; that on said day defendant's railroad and right of way ran through Clark county, Indiana, and crossed at right angles a public highway known as the "Salem road," at a point near

St. Joe, Clark county, Indiana; that said railroad runs north and south at said highway crossing, and said highway runs east and west; that on said day while plaintiff's decedent was traveling west on said highway, and when he arrived at a point about four or five feet from defendant's railroad track and right of way, where the same crosses said highway, and when he reached a point about twelve inches west of the west rail of defendant's railroad track he was struck by a locomotive in charge of defendant's servants, drawing a passenger-train, and traveling north on said railroad track at the rate of fifty miles per hour, and then and there instantly killed.

The first paragraph alleges, in addition, that defendant's servants, in charge of defendant's locomotive and train of cars which struck and killed the decedent, carelessly and negligently failed and omitted to sound the whistle on said locomotive distinctly three times when said locomotive was not less than eighty rods nor more than one hundred rods from said crossing, and carelessly and negligently failed to ring the bell attached to said locomotive continuously when said locomotive was not less than eighty rods nor more than one hundred rods from said crossing, and until said locomotive had reached said crossing. In addition to said objections made to the first paragraph, it is especially objected that it contains no averment that if the statutory signals had been given they could have been heard and the injury avoided. Said paragraph, after a direct statement of the acts of negligence by defendant's servants, alleges that as a direct result of the negligence of the defendant, as herein set out, the decedent met his death. These averments taken together sufficiently charge the cause of the injury and the fault of defendant.

In the second paragraph the defendant is also charged with having, on said October 7, and for more than four weeks prior thereto, kept and maintained a berry shed, located at a point about one hundred and sixty feet south of

the crossing of said highway and about six feet from defendant's railroad track; that said shed was about fifteen feet high, fifteen feet wide, and about thirty-six feet long; that beginning at the south end of said berry shed there was, and had been for more than two weeks prior to the accident, a pile of crossties extending about four hundred and fifty-eight feet south of said shed and parallel with said railroad track and right of way; that said crossties extended about nine feet above the grade of said railroad track; that both the berry shed and the crossties were on the east side of said track; that because of said crossties upon the defendant's right of way as aforesaid, and of said berry shed, decedent's view of said railroad track was obstructed, beginning at a point 150 feet south of said crossing, for a distance of 494 feet; that, notwithstanding the fact that they obstructed the view of people using said highway traveling west, defendant carelessly and negligently permitted them to remain. It is also alleged that, by reason of the carelessness and negligence of the defendant's servants in failing to sound the whistle on said locomotive and to ring the bell attached to the same, as complained of herein, and owing to the carelessness and negligence of defendant in permitting said crossties and berry shed to be and remain along and upon the right of way, obstructing decedent's view, he received the injuries which caused his death as herein complained of.

The maintenance of the shed and the pile of crossties is charged directly to appellant. It is not alleged by direct averment that when the servants failed to discharge 3. their particular duties they were in the employ of, and acting for, the appellant, but under recent decisions the complaint was sufficient to withstand a demurrer. *Cleveland, etc., R. Co. v. VanNatta* (1909), *post,* 608; *Indianapolis Union R. Co.* v. *Waddington* (1907), 169 Ind. 448; *Southern R. Co.* v. *Elliott* (1908). 170 Ind. 273; *Cincinnati, etc., Electric St. R. Co.* v. *Cook* (1909), *ante,* 303.

The third paragraph, like the second, charges the defendant with having kept and maintained on its right of way a berry shed, describing it substantially as stated in the second paragraph before set forth, and, in addition alleges that, owing to the carelessness and negligence of defendant in permitting said crossties and berry shed to be and remain along and upon the right of way, decedent's view south of said railroad track from said crossing was obstructed for a distance of about five hundred feet, but that the engineer in charge of said locomotive which struck and killed decedent saw and discovered decedent's perilous situation while crossing said railroad track when within about one hundred and twenty-five feet of decedent, and carelessly and negligently failed to sound any danger signal on said locomotive, and carelessly and negligently failed to shut off the steam of said locomotive, or to apply his air before striking decedent and killing him; that if the servant in charge of said locomotive had sounded the danger whistle or shut off the steam on said locomotive, reversed his engine and applied the air, the speed of said locomotive would have been reduced to fifteen or twenty miles per hour by the time said locomotive reached decedent on said crossing, which would have enabled decedent to pass over said railroad track, and he would have escaped being killed by said locomotive; that decedent met his death as a direct result of the carelessness and negligence of defendant in permitting said berry shed and crossties to remain upon the right of way as complained of herein, and of the carelessness and negligence of defendant's engineer in failing to sound the danger signal on said locomotive after seeing and discovering decedent's peril, and of his carelessness and negligence in failing to reverse his engine or apply the air.

4. The maintenance of the shed and pile of crossties upon the right of way was not in itself negligence as a matter of law (*Chicago, etc., R. Co. v. Thomas* [1897], 147 Ind. 35); but the conditions and circumstances under

which they were maintained might, under the evidence, with other conduct and management of the trains of appellant, have constituted negligence. The cases cited in connection with the second paragraph apply to the third.

The facts specially found by the jury are, in part, as follows: Defendant's railroad runs approximately north and south, and the public highway runs east and west at a point where it crosses appellant's track north of a berry shed. It was 196 feet from the south end of the crossing to the north end of the berry shed, which was located six feet from the railroad tracks, and which was from thirty to thirty-one feet long, between ten and eleven feet wide, and twelve feet high at the northeast corner and fourteen feet high at the northwest corner. There was nothing between the shed and the railroad track to obstruct the view of a person standing on the intersection of the highway and railroad track and looking southwardly along the track. There was nothing between the shed and the railroad track to obstruct the view of a person approaching the crossing from the east along the public highway after he was within five feet of the railroad track. There was a stack of crossties, from four to seven feet in height, and eight feet in width, located from five to seven feet from the track, extending from the south end of the berry shed southwardly for one hundred and fifty to three hundred feet, at right angles to the railroad track. There was nothing within four hundred feet of the crossing to obstruct the view of a person on the crossing and looking southwardly along the railroad track. The berry shed obstructed the view for a distance of within four hundred and twenty feet of the crossing, and the view for a distance of four hundred feet of one occupying a position between the east rail of the track and the point two feet east thereof, looking southwardly along the railroad track.

The evidence is uncontradicted that the decedent walked direct from a saloon, located a few minutes' walk from, and

in plain view of, the railroad crossing, to and upon the railroad track without stopping; that when he was within five or six feet of the track he looked up and down the track, and walked more slowly.

The engineer first discovered the decedent when the engine was within two hundred feet of the crossing. He was between the rails of the track, walking toward the west. The engineer relied upon the presumption that he would step from the track and avoid injury. When he was struck he was in the act of stepping from the railroad track to a point west of the crossing. When the decedent was six or eight feet east of the track he looked up and down the track. The engine bell was not ringing at the time the locomotive approached and crossed over the crossing. At a distance of 400 feet south of the crossing a person of ordinary height, occupying a position on or just east of the crossing, could have seen some part of the train by looking attentively in the direction from which the train was approaching. The locomotive and train ran at a speed of forty-five miles per hour, and consisted of an engine, tender and five cars. It was a regular train on its north-bound trip, and was ordinarily run over the crossing at a speed of from forty to forty-five miles per hour. The decedent was partly deaf. The train in approaching made a rumbling noise, which could have been heard by a person of ordinary hearing for a distance of from one-fourth to one-half a mile. The track where it passed over the highway crossing, and for some distance south, was constructed on a curve approximating from four to six degrees. If the decedent had looked southwardly along the track he could have seen the locomotive when it was 200 feet south of the crossing. At that time he was in the center of the track. The decedent lived about two and one-half miles from said crossing.

Some of the findings conflict. Some are in conflict with the general verdict. Others are not sustained by the evi-

dence. But without holding that such conflict is irreconcilable under the rule that controls, it is proper, we think, to say that such doubt is raised from the whole record, as to the correctness of the result, that another hearing should be had.

Other alleged errors are discussed, but they may not arise again upon another trial.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.

Rabb, Myers and Hadley, JJ., concur.

Watson, C. J., did not participate.

Roby, J., dissents.


## DISSENTING OPINION.

ROBY, J.—The complaint is broad enough to admit proof to the effect that the plaintiff's negligence, conceding him to have been contributorily negligent, ceased to be the proximate cause of the injury complained of by reason of the opportunity which the defendant had to avert the injury after it knew, or ought to have known, that the same was imminent. *Indianapolis St. R. Co.* v. *Marschke* (1906), 166 Ind. 490; *Indianapolis St. R. Co.* v. *Schmidt* (1905), 35 Ind. App. 202. This doctrine is applicable to a case of this kind. *Southern Ind. R. Co.* v. *Fine* (1904), 163 Ind. 617.

It is true that a railroad engineer may presume, within reasonable limits, that a person whom he sees upon the railroad track in front of the train will leave it before the train reaches him, but such presumption does not operate to relieve the engineer from exercising reasonable care in the premises, and if there is any circumstance or condition tending to show that such person is not aware of the proximity or approach of the train, the presumption ceases to operate, and immediate and timely action is demanded from such engineer.

I think the evidence is sufficient to justify a finding that the engineer was not authorized to rely upon such presumption, and, that being the case, the judgment ought to be affirmed.